IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, EX REL. MICHAEL N. SWETNAM, JR., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 1:08-CV-446 |
| VALLEY BAPTIST HEALTH SYSTEM and VALLEY BAPTIST MEDICAL CENTER | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING RELATOR'S CLAIM FOR CERTAIN DAMAGES

Defendants, Valley Baptist Health System ("VBHS") and Valley Baptist Medical Center ("VBMC") (collectively, "Valley Baptist"), file this Motion for Partial Summary Judgment Regarding Relator's Claim for Certain Damages ("Motion") and in support thereof would show the Court as follows:

## I.    SUMMARY OF ARGUMENT

1.    This Motion seeks a judgment from this Court as to the damages that Relator, Michael N. Swetnam, Jr. ("Swetnam" or "Relator"), may recover under the False Claims Act ("FCA") and for unjust enrichment as a matter of law.[1] Here, Swetnam seeks the following damages:

- Statutory civil penalties ranging from $5,000 to $10,000 for each FCA violation;

- Disgorgement of reimbursements Valley Baptist received from Medicare and Medicaid for medical services provided to Medicare and Medicaid patients; and

- Unjust enrichment measured by the "additional" Medicare and Medicaid reimbursements realized by Valley Baptist due to an increase in the number of physicians practicing as staff physicians at the hospital.

---

[1] 31 U.S.C. §§ 3729 et seq.

For the reasons set forth below, and assuming Valley Baptist violated the FCA,[2] the only recoverable damages that Swetnam would be entitled to recover in this action is the statutory civil penalty for violations that occurred during the applicable limitations period. Accordingly, Valley Baptist seeks partial summary judgment on this ground.

## II.    SUMMARY OF BACKGROUND

2.      This Motion presents a pure question of law—i.e., recoverable damages under the FCA and for unjust enrichment—and does not ask or require the Court to make any factual conclusions. Nevertheless, a brief summary of the background and undisputed facts may be helpful in the Court's consideration of the legal issues presented.[3]

3.      On October 9, 2008, Swetnam filed this FCA *qui tam* action in the wake of Valley Baptist discovering and reporting to the Texas Department of Insurance that Swetnam was and had been involved in an insurance fraud scheme for several years by which Swetnam (i) charged Valley Baptist for premiums on general liability and windstorm insurance policies that did not exist, and (ii) otherwise altered premiums to be paid by Valley Baptist on such insurance policies that did exist. Swetnam was ultimately indicted for his conduct, and on May 3, 2010, a jury found him guilty on three counts of mail fraud. United States District Judge Keith Ellison sentenced Swetnam to thirty-seven (37) months in federal prison and ordered Swetnam pay Valley Baptist almost $3,000,000 in restitution for his involvement in the insurance fraud scheme.[4]

---

[2]  Valley Baptist expressly reserves the right to file additional motions for summary judgment in accordance with this Court's Amended Scheduling Order.
[3]  Having already ruled on Valley Baptist's earlier filed motions for summary judgment with respect to some of Swetnam's claims, this Court is familiar with the facts that gave rise to this lawsuit. Valley Baptist incorporates the facts included in its previous motions for summary judgment as if set forth herein and refers the Court to that Motion for a further recitation of the facts. *See* Doc. 70.
[4]  The insurance fraud scheme that resulted in Swetnam being incarcerated is unrelated to the malpractice insurance subsidy program at issue in this lawsuit.

4.      During the same time that Swetnam was being investigated for his criminal involvement in the insurance fraud scheme, the Department of Justice was investigating Swetnam's allegations in this *qui tam* action. The sole basis of Swetnam's claim is that Valley Baptist used a medical malpractice insurance program—the XOL Program that Swetnam created in 1993 and administered for Valley Baptist until it was terminated in 2002—to knowingly and intentionally induce patient referrals to Valley Baptist in violation of the Stark Law,[5] the Anti-Kickback Statute ("AKS")[6] and the FCA. After the Department of Justice completed its lengthy investigation of Swetnam's claims, the government declined to intervene in Swetnam's *qui tam* action.

5.      From the time the XOL Program was implemented in 1993 and until the time it was terminated in 2002, Swetnam supported and defended the XOL Program.[7] Remarkably, Swetnam now claims that the XOL Program violated certain federal laws, including the Stark Law, the AKS, and the FCA. Through this lawsuit, Swetnam asks this Court (i) to enter statutory civil penalties of hundreds of millions of dollars in his favor, (ii) to disgorge Valley Baptist of the hundreds of millions of dollars that the government reimbursed Valley Baptist for providing medical services to the Rio Grande Valley's elderly and low income residents, and (iii) to award him in excess of six million dollars based on alleged unjust enrichment damages.

6.      Other than Valley Baptist's use of Swetnam's XOL Program, Swetnam does not allege any wrong doing on Valley Baptist's part. That is, Swetnam does not dispute that Valley Baptist actually provided the medical services that the government reimbursed, that the medical services provided were billed to Medicare and Medicaid at the appropriate amounts, and that the medical services Valley Baptist provided to Medicare and Medicaid patients were necessary.

---

[5] 42 U.S.C. § 1395 et seq.
[6] 42 U.S.C. § 1320 et seq.
[7] Because of the confidential nature of the documents evidencing Mr. Swetnam's support of the XOL Program, these documents will be hand delivered to the Court with a courtesy copy to Mr. Swetnam's counsel.

7.     This Court previously granted summary judgment in Valley Baptist's favor on Swetnam's claims under the Stark Law.[8] This Court also granted summary judgment as to any FCA claims that would have arisen prior to October 9, 2002.[9] As such, the applicable damages period, if any, would only be for the period from October 9, 2002 until April 15, 2003—the date the XOL Program was terminated.[10] Swetnam requested, and Valley Baptist agreed that, this Court should address by a motion for partial summary the recoverable damages that Swetnam may seek from Valley Baptist should the fact finder determine that Valley Baptist violated the FCA.[11] Because there are no material factual issues and the question before the Court is strictly one of statutory interpretation, this motion can be decided as a matter of law.

8.     As a matter of law, this Court should enter judgment that the damages sought by Swetnam are not recoverable. First, the civil penalty is not calculated on every reimbursement request as Swetnam alleges. Rather, if it is awarded, the civil penalty should be calculated only on each annual cost report that is shown to be false in violation of the FCA. Second, damages and disgorgement are different remedies that are measured differently. Third, the False Claims Act does not grant *qui tam* relators the remedy of disgorgement. Moreover, disgorgement of all funds the government paid to Valley Baptist violates the Eighth Amendment's Excessive Fines Clause because it is grossly disproportionate to the gravity of Valley Baptist's allegedly improper act—i.e., using Swetnam's XOL Program. Finally, Swetnam is not entitled to damages for an unjust enrichment claim because he lacks standing to pursue such a claim.

9.     For these reasons, Swetnam is not entitled to the damages he seeks. Accordingly, Valley Baptists requests that this Court enter judgment that Swetnam cannot, as a matter of law,

---

[8] *See* Doc. 70.
[9] *See* Doc. 66.
[10] In his expert report, Swetnam's own damages expert, Paul C. Benoit, limits Swetnam's damages to this time period.
[11] This Motion addresses the very narrow issue of recoverable damages. Valley Baptist expressly reserves its right to file motions for summary judgment and motions to challenge Swetnam's designated experts.

recover disgorgement damages or unjust enrichment damages and that the civil penalty sought by Swetnam is based on each annual cost report that is proven to have been made in violation of the FCA during the applicable limitations period, not on every Medicare and Medicaid reimbursement claim made by Valley Baptist.

## III.    ARGUMENTS AND AUTHORITIES

10.    Valley Baptist moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Swetnam's claims for civil penalties and a disgorgement of Valley Baptist's profits for violations of the FCA and for unjust enrichment damages.

### A.    Summary Judgment Standard.

11.    "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."[12] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ."[13] "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14]

12.    "Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact."[15] If the burden of proof at trial lies with the non-moving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case."[16] While the

---

[12] Fed. R. Civ. P. 56(a).
[13] Fed. R. Civ. P. 56(c)(I)(A).
[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[15] *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323).
[16] *Celotex*, 477 U.S. at 325.

party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case.[17]

13.   "When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegation of its pleadings."[18] The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.[19] "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[20]

**B.   The FCA provides for civil penalties and an award of actual damages.**

14.   Under the FCA, if a person is found to have engaged in one of seven statutorily defined types of fraud, that person is liable for two separate categories of damages: (1) a civil penalty; and (2) the government's actual damages.[21] With respect to the civil penalty, the court must assess a civil penalty of not less than $5,000 and not more than $10,000 for each FCA violation.[22] For actual damages, the court must award "3 times the amount of damages which the government sustains because of the act of that person" who violated the FCA.[23] The relator who brings an FCA action may also be entitled to a portion of the government's recovery. Here, because the government did not intervene in this lawsuit and only if Valley Baptist is found liable for violating the FCA, Swetnam would be entitled to recover from Valley Baptist an amount that is between 25% and 30% of the sum of the civil penalty and government's actual

---

[17] *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).
[18] *Id.*
[19] *Id.*
[20] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1068, 1075 (5th Cir. 1994) (en banc)).
[21] 31 U.S.C. § 3729(a).
[22] *Id.* For impermissible acts occurring after August 30, 1999, the minimum and maximum penalties are $5,500 and $11,000, respectively. *See* 28 C.F.R. § 85.3(a)(9) (2007).
[23] 31 U.S.C. § 3729(a).

damages.[24] Swetnam would also be entitled to his reasonable attorneys' fees and expenses.[25] Although the statute is clear, the parties dispute the measure of recoverable damages in this case.

**C.      Even if the fact finder determines Valley Baptist violated the FCA, Relator is not entitled to entire amount of civil penalties that he seeks.**

15.      As discussed above, if a person violates the FCA, that person is a liable for a civil penalty of not less than $5,000 and not more than $10,000 for each fraudulent claim.[26] "Claim" is defined as any request or demand … for money or property.[27] Swetnam seeks to recover between $5,000 and $10,000 for every reimbursement request that Valley Baptist submitted to the government for medical services rendered between October 9, 2002 and April 15, 2003 by Valley Baptist physicians who participated in the XOL Program. As a matter of law, Swetnam is not entitled to the damages he seeks.

16.      Swetnam does not allege that any single reimbursement request that Valley Baptist submitted to the government was fraudulent. Indeed, Swetnam does not dispute that Valley Baptist actually provided the medical services that the government reimbursed, that the medical services were billed at the appropriate amounts and that the provided medical services were necessary. Therefore, this lawsuit does not involve fraudulent reimbursement requests.

17.      Notwithstanding the foregoing, Swetnam claims he is entitled a civil penalty for virtually every Medicare or Medicaid reimbursement claim Valley Baptist submitted to the government for medical services rendered between October 9, 2002 and April 15, 2003 by physicians who participated in the XOL Program (approximately 31,056 claims during this period). Based on Swetnam's claim, he seeks a $5,000 to $10,000 civil penalty for every single reimbursement request the government paid Valley Baptist during the relevant time period—all

---

[24] 31 U.S.C. 3130(d)(2)
[25] *Id.*
[26] 31 U.S.C. § 3729(a).
[27] 31 U.S.C. § 3729(c).

31,056 claims, for a total of $155.3 million to $310.6 million in civil penalties. As described below, Swetnam's claim fails as a matter of law.

18.     Under the FCA, the "violation" is the submission of a false claim.[28] Here, Swetnam claims Valley Baptist violated the FCA because Valley Baptist submitted annual cost reports to the government that were false. Specifically, Swetnam claims that, in the annual cost reports, Valley Baptist certified that it had complied with all laws and regulations when it had in fact not done so. Therefore, the violation is the submission of the false annual cost report, and each allegedly false annual cost report represents one false claim, for which Valley Baptist could be liable for one civil penalty. [29] The civil penalty of $5,000 to $10,000 is not applied to each reimbursement request.

19.     Because this Court's earlier order on the statute of limitations bars Swetnam's claims for FCA violations that occurred prior to October 2, 2002, Swetnam can only recover a civil penalty for each allegedly false annual cost report that was submitted after October 2, 2002. Here, the parties do not dispute that the 2002-2003 annual cost report is the only applicable annual cost report. Therefore, the range of civil penalties for which Valley Baptist could be liable totals anywhere between $5,000 and $10,000.

20.     Accordingly, this Court should render judgment that the damages recoverable for violation for submission of a false claim would only be the one statutory penalty in an amount between $5,000 and $10,000 relating to the 2002-2003 annual cost report.

---

[28] *Smith v. United States*, 287 F.2d 299, 303-04 (5th Cir. 1961); *see also Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 545 U.S. 409, 412-13 (2005).
[29] *See United States ex rel. Davis v. District of Columbia*, Civil Action No. 06-629 (JDB), 2014 U.S. Dist. LEXIS 42725, at *45-46 (D.D.C. Mar. 31, 2014).

**D.      Even if the fact finder determines Valley Baptist violated the FCA, Relator is not entitled to the actual damages that he seeks.**

21.      As discussed above, the FCA provides for two categories of damages: "civil penalt[ies] and damages." There is not any one specific standard for calculating damages under the FCA.[30] Instead, courts have used several different damage models, adapting them to the facts of each case.[31] Here, Swetnam seeks as damages a disgorgement from Valley Baptist of all amounts Valley Baptist received from the government for medical services rendered by physicians who participated in the XOL Program from October 9, 2002 through April 15, 2003.[32] Swetnam also seeks unjust enrichment damages under the theory that the Valley Baptist received additional Medicare and Medicaid reimbursements due to an increase in the number of physicians practicing at Valley Baptist because of the XOL Program. As a matter of law, Swetnam is not entitled to these damages.

   i.   Damages and disgorgement are different remedies that are measured differently.

22.      Damages and disgorgement are distinct remedies. "Disgorgement of improper profits" is a restitutionary remedy,[33] and restitution is appropriate only where there has been a showing of unjust enrichment.[34] Although restitution can be granted as a form of legal relief, it is generally considered an equitable remedy.[35] "Money damages are, of course, the classic form of legal relief."[36] In addition, damages and restitutionary remedies (like disgorgement) are measured differently. Damages are measured by the plaintiff's loss; restitution is measured by

---

[30] *See, e.g., United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 922 (4th Cir. 2003).
[31] *See, e.g., Morse Diesel Int'l, Inc. v. United States*, 79 Fed. Cl. 116 (2007) (pagination not available).
[32] As discussed above, Swetnam would only be entitled to damages for FCA violations that occurred six years before the date he filed suit (i.e., for violations that occurred after October 9, 2002.).
[33] *Chauffers, Teamsters, and Helpers, Local Number 391 v. Terry*, 494 U.S. 558, 570-70 (1990).
[34] *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) (citing 66 Am. Jur. 2d Restitution and Implied Contracts § 4 (1973)).
[35] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) ("'equitable relief' can also refer to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution . . . .") (emphasis in original)).
[36] *Id.* at 255.

the defendant's unjust gain.[37] Put simply, "*restitution* is not *damages*; restitution is a restoration required to prevent unjust enrichment."[38] Here, Swetnam does not have a valid claim for unjust enrichment because: (i) as described below, he lacks standing to pursue such a claim, and (ii) there is no dispute Valley Baptist provided the medical services that the government reimbursed. For these reasons, the Court should not award Swetnam damages that include a disgorgement of all amounts Valley Baptist received from the government from October 9, 2002 until April 15, 2003.

        ii.   The FCA's plain language does not grant Swetnam the remedy of disgorgement.

23.     Although there is not any one specific standard for calculating damages under the FCA,[39] the FCA's text does not permit Swetnam to seek as damages a disgorgement. Unless a statute's text is ambiguous, courts are bound by the text's plain meaning.[40] Swetnam does not allege that the FCA or its remedial provision is ambiguous. In fact, the FCA clearly and unequivocally sets out the remedies imposed on violators: a civil penalty, "plus 3 times the amount of <u>damages</u> which the Government sustains because of the act of that person."[41] Because the FCA's text is not ambiguous, courts are bound by the FCA's plain meaning.

24.     The word at issue is "damages," which the FCA does not define. "When words in a statute are not otherwise defined, it is fundamental that they 'will be interpreted as taking their ordinary, contemporary, common meaning.'"[42] "Damages" has a well-understood meaning—i.e., compensation for loss or injury.[43] Based on the FCA's plain meaning and the "ordinary, contemporary, [and] common meaning" of "damages," the only allowable remedy under the

---

[37] Dan B. Dobbs, <u>Law of Remedies: Damages, Equity, Restitution</u> § 3.1, 208 (2d ed. 1993).
[38] *Id.* at § 4.1(2), 371 (emphasis in original); *see also Mertens*, 508 U.S. at 256 (distinguishing between restitution and compensatory damages); *Terry*, 494 U.S. at 570-71 (same).
[39] *See, e.g., United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 922 (4th Cir. 2003).
[40] *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 567-68 (2005).
[41] 31 U.S.C. § 3729(a) (emphasis added).
[42] *Morse v. Republican Party of Va.*, 517 U.S. 186, 254 (1996).
[43] *See* <u>Black's Law Dictionary</u> 416 (8th ed. 2004) (defining "damages" as "money claimed by, or ordered to be paid to, a person as compensation for loss or injury").

FCA is compensatory damages, not restitution (i.e., disgorgement).[44] The FCA's statutory scheme is coherent and consistent, and none of the other provisions or sub-sections conflict with the statutory text at issue. To interpret the FCA as Swetnam wants "would require . . . reading into the statute a word—[restitution]—that is not otherwise there."[45]

25.    In addition, the Supreme Court directs courts to take particular care when interpreting remedial provisions. For example, in *Transamerica Mortg. Advisors, Inc. v. Lewis*, the Supreme Court explained that:

> [i]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. "When a statute limits a thing to be done in a particular mode, it includes the negative and any other mode."[46]

Moreover, "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures of enforcement." [47] For this reason, this Court should be "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text."[48]

26.    Put simply, Supreme Court precedent directs this Court to construe the FCA's remedial provision so that it is consistent with the FCA's text and plain meaning. This construction is especially important in FCA's cases because, to protect the government's interests, the government can pursue its own claims if it so chooses. Here, the government chose

---

[44] *Dept. of Hous. And Urban Dev. v. Rucker*, 535 U.S. 125, 130 (2002) (unambiguous provision "evident from the plain language of the statute").
[45] *United States v. Kerley*, 416 F.3d 176, 179 (2d Cir. 2005).
[46] 444 U.S. 11, 19-20 (1979) (citing *Botany Worsted Mills v. United States*, 278 U.S. 282, 289 (1929)) (construing the Investment Advisers Act of 1940).
[47] *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (collecting cases and construing ERISA); *see also Meghrig*, 516 U.S. at 487-88 ("Where Congress has provided 'elaborate enforcement provisions' for remedying the violation of a federal statute, . . . 'it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing' under the statute.).
[48] *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (construing ERISA).

not to do so. As a result, it is not necessary for this Court to resort to the Swetnam's extraordinary construction of the FCA.

27.      When interpreting statutes, courts may also consider governing precedent.[49] Valley Baptist has not found a single case where the Court has interpreted the FCA so as to award a *qui tam* relator disgorgement. However, there are cases that provide helpful guidance. In those cases, courts narrowly construed "damages" to mean some form of "actual damages" and thus, excluded various types of other damages (such as prejudgment interest and consequential damages)[50]—let alone restitutionary remedies such as contribution, indemnification or disgorgement.[51]

28.      There is at least one case where a court awarded a disgorgement (*United States v. Rogan*).[52] However, *Rogan* is not binding on this court and is distinguishable on several grounds. First, in *Rogan*, the United States was the party who prosecuted the lawsuit. Here, Swetnam is the party who filed this lawsuit, and—after investigating Swetnam's claims for approximately two years—the government chose not to intervene. Second, in *Rogan*, the government was awarded a disgorgement, not a *qui tam* relator.[53] As discussed above, Valley Baptist has not found a single case where the Court has interpreted the FCA so as to award a *qui tam* relator disgorgement. Third, *Rogan* involved allegations of criminal misconduct.[54] Here, there are no allegations that Valley Baptist committed any criminal act. Fourth, in *Rogan*, the government alleged that the defendant submitted claims to Medicare and Medicaid for services that either had not been performed or were not necessary.[55] Here, the parties do not dispute that Valley Baptist

---

[49] *See Exxon Mobil Corp.*, 545 U.S. at 556 (considering Supreme Court's established jurisprudence when conducting statutory interpretation).
[50] *See, e.g., Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 131 (2003).
[51] *See, e.g., Mortgages, Inc. v. United States Dist. Court for the Dist. of Nev.* 934 F.2d 209, 213 (9th Cir. 1991).
[52] *See Rogan United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008).
[53] *Id.* at 453.
[54] *Id.* at 451.
[55] *Id.* at 452.

actually provided the medical services that the government reimbursed, that the medical services were billed at the appropriate amounts, and that the provided medical services were necessary. The only allegedly fraudulent activity Swetnam alleges is that Valley Baptist submitted annual cost reports wherein it certified that it had complied with all laws and regulations—something it believed it had done. For these reasons *Rogan* is inapplicable to this lawsuit and should not be followed.

      iii.  <u>Disgorgement violates the Eighth Amendment's Excessive Fines Clause.</u>

      29.     Should this Court be inclined to follow *Rogan*—which is not binding and clearly distinguishable—disgorgement of all amounts the government paid to Valley Baptist for medical services by Valley Baptist physicians who participated in the XOL Program violates the Eighth Amendment's Excessive Fines Clause. Courts evaluating challenges under the Eighth Amendment's Excessive Fines Clause must determine whether or not the punitive forfeiture is grossly disproportional to the gravity of a defendant's offense.[56] If it is, the punitive forfeiture violates the Excessive Fines Clause.[57] Damages imposed under the FCA are "essentially punitive in nature."[58] "In an excessive Fines Clause inquiry, the burden rests on the defendant."[59]

      30.     Courts consider several factors when evaluating whether a fine is excessive under the Excessive Fines Clause, including: (1) the extent of the harm caused; (2) the gravity of the offense relative to the fine; (3) whether the violation was related to other illegal activity, and the nature and extent of that activity; and (4) the availability of other penalties and the maximum

---

[56] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

[57] *Id.*

[58] *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784 (2000); *see also id.* at 786 (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.").

[59] *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 488 F. Supp. 2d 719, 744 (N.D. Ill. 2007) (citing *Bajakajian*, 524 U.S. at 348 (Kennedy, J. dissenting)).

penalties which could have been imposed.[60] Here, after evaluating these factors, disgorgement of all amounts Medicare reimbursed Valley Baptist from October 9, 2002 until April 15, 2003 results in an unconstitutional penalty against Valley Baptist.

31.     With respect to the first factor—i.e., the extent of the economic harm the government suffered as a result of Valley Baptist's use of the XOL Program—Swetnam has not identified any financial harm Valley Baptist caused to the government. Again, the parties do not dispute that Valley Baptist actually provided the medical services that Medicare reimbursed and that the provided medical services were necessary. In addition, Swetnam does not allege that Valley Baptist inflated the costs of the medical services that Medicare reimbursed, or that the medical services could have been obtained at a lower cost absent Valley Baptist's use of the XOL Program. Put simply, Swetnam failed to establish that Valley Baptist's conduct caused the government any economic harm. As a result, this factor clearly weighs in favor of an Excessive Fines Clause violation.

32.     Turning to the second factor—i.e., the gravity of the offense relative to the fine— other than Valley Baptist's use of Swetnam's XOL Program, there is no evidence, nor are there any allegations that Valley Baptist's conduct negatively impacted the government's reimbursement process. In addition, Swetnam offers no evidence, nor has he claimed, that the medical services that Valley Baptist provided and which Medicare reimbursed were deficient or fraudulent in any manner. Rather, Valley Baptist's liability—if any—would be based on the annual cost reports that Valley Baptist submitted to Medicare wherein Valley Baptist certified that it complied with all federal laws and regulations—which it believed it had done. None of Valley Baptist's reimbursement requests and annual cost reports contained any factually false

---

[60] *See, e.g., United States v. 3814 NW Thurman St., Portland, Or.*, 164 F.3d 1191, 1197-98 (9th Cir. 1999) (citing *Bajakajian*, 524 U.S. at 336-39).

information, nor did they cause the government any non-economic harm.[61] Rather, the cost reports are deemed false as a matter of law based solely on judicial constructions of the FCA. For these reasons, this factor weighs in favor of an Excessive Fines Clause violation.

33.     As to the third factor—i.e., whether the violation was related to other illegal activity, and the nature and extent of that illegal activity—Swetnam does not allege Valley Baptist engaged in any other unlawful conduct in connection with the XOL Program, nor has the government pursued any criminal charges or intervened in the litigation instituted by Swetnam. Instead, Swetnam is the party who engaged in and who was incarcerated for illegal activity. Based on the foregoing, this factor clearly weighs in favor of an Excessive Fines Clause violation.

34.     As to the final factor—i.e., the availability of other penalties and the maximum penalties which could have been imposed —the government did not sustain any demonstrable damages. Therefore, any damages imposed would be grossly disproportionate. Moreover, considering this lawsuit's facts, Swetnam's own illegal activities and the role Swetnam played in creating and administering the XOL Program, it is difficult to justify that Swetnam should be entitled to the windfall he seeks. Awarding Swetnam a windfall does not encourage honest dealings with the government. This factor clearly weighs in favor of an Excessive Fines Clause violation.

35.     Because all four factors weigh in favor of an Excessive Fines Clause violation, the Court should conclude that the actual damages Swetnam seeks—disgorgement of all amounts the government reimbursed Valley Baptist—results in the imposition of an excessive fine that violates the Eighth Amendment. For that reason, the Court should not award Swetnam the damages he seeks.

---

[61] *See United States v. Liss*, 265 F.3d 1220, 1231-32 (7th Cir. 2001).

iv. Because Swetnam lacks standing to pursue common law claims, he is not entitled to any damages for those claims.

36.     Swetnam also seeks damages for a common law unjust enrichment claim to be measured by the "additional" Medicare and Medicaid reimbursements realized by Valley Baptist due to an increase in the number of physicians practicing as staff physicians at the hospital. However, a relator in a qui tam FCA action does not have standing to assert common law claims based on injury sustained by the United States."[62] Therefore, to the extent Swetnam seeks damages based on a common law claim (e.g., unjust enrichment), he lacks standing to pursue that claim and is not entitled to any damages for that claim.

## IV.    CONCLUSION AND PRAYER

For these reasons, Defendants, Valley Baptist Health System and Valley Baptist Medical Center respectfully request the Court grant their Motion for Partial Summary Judgment and enter a judgment that Relator, Michael N. Swetnam, Jr., cannot, as a matter of law, recover disgorgement damages or unjust enrichment damages and that the civil penalty sought by Relator is based on each annual cost report that is proven to have been made in violation of the FCA during applicable limitations period. Defendants also requests such other and further relief as to which it may be entitled.

[signature on following page]

---

[62] *United States ex rel. Rockafeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003) (citing *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 451-52 (S.D.N.Y 2001) (holding that a relator lacks standing to bring common law claims of fraud, mistake of fact, and unjust enrichment); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass. 2000) (holding that a relator lacks standing to bring common law claims of fraud, payment under mistake of fact, and unjust enrichment); *United States ex rel. Long v. SCS Bus. & Tech. Inst.*, 999 F. Supp. 78, 92 (D.D.C 1998) (holding that relator lacks standing to bring common law unjust enrichment claim), rev'd on other grounds, 173 F.3d 870 (D.C. Cir. 1999)); *see also United States ex rel. Repko v. Guthrie Clinic, P.C.*, 557 F. Supp. 2d 522, 530 (M.D. Penn. 2008).

Respectfully submitted,

**BOYARMILLER**

By: ___*/s/ Chris Hanslik*_____
        Chris Hanslik
        Federal Id. No. 19249
        State Bar No. 00793895
        4265 San Felipe Road, Suite 1200
        Houston, Texas 77027
        (713) 850-7766 (telephone)
        (713) 552-1758 (facsimile)
        Email: chanslik@boyarmiller.com

ATTORNEY-IN-CHARGE FOR
DEFENDANTS VALLEY BAPTIST
HEALTH SYSTEM AND VALLEY
BAPTIST MEDICAL CENTER

OF COUNSEL:
Edgar Saldivar
Federal I.D. No. 618958
State Bar No. 24038188
BOYARMILLER
4265 San Felipe Road, Suite 1200
Houston, Texas 77027
(713) 850-7766 (telephone)
(713) 552-1758 (facsimile)
Email: esaldivar@boyarmiller.com

Donald H. Romano
Foley & Lardner, LLP
D.C. Bar No. 991132
3000 K Street NW, Suite 600
Washington, DC 20007-5109
(202) 945-6119 (telephone)
(202) 672-5399 (facsimile)
Email: DRomano@Foley.com

LOCAL COUNSEL:
Benigno (Trey) Martinez
Law Office of Benigno (Trey) Martinez
State Bar No. 00797011
1201 E. Van Buren
Brownsville, Texas 78520
(956) 546-7159 (telephone)
(956) 544-0602 (facsimile)
Email: Trey@martinezybarrera.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Valley Baptist Health System and Valley Baptist Medical Center Motion for Partial Summary Judgment was served via facsimile on this the 30th day of May, 2014, on all counsel of record as follows:

Edward W. Allred
Francisco Guerra, IV
Mikal C. Watts
WATTS, GUERRA CRAFT LLP
300 Convent Street, Suite 100
San Antonio, TX  78205

*Via Facsimile:* (210) 527-0501

*Attorneys for Relator*
*Michael N. Swetnam, Jr.*

_____/s/ Chris Hanslik_____
Chris Hanslik