UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, EX REL. MICHAEL N. SWETNAM, JR., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CASE NO. 1:08-CV-446 |
| VALLEY BAPTIST HEALTH SYSTEM AND VALLEY BAPTIST MEDICAL CENTER, | § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING CLAIM FOR CERTAIN DAMAGES**

Plaintiff, the United States of America *ex rel.* Michael N. Swetnam, Jr. ("Relator") files this Sur-reply[1] to Defendants Valley Baptist Health System and Valley Baptist Medical Center's (collectively, "VBMC" or "Defendants") Motion for Partial Summary Judgment Regarding Plaintiff's Claim for Certain Damages (the "Motion"), and in support thereof, would show the Court as follows:

<u>SUMMARY OF THE RESPONSE</u>

Defendants Reply (Doc. 101) is mostly a regurgitation of the flawed arguments originally raised in their Motion. Indeed, Defendants cannot cite to even one case that supports their positions. Instead, continuing to ignore the substantive and procedural realities of the False Claims Act ("FCA") and *qui tam* litigation, Defendants make feeble attempts to distinguish a few of the multitude of cases cited by Plaintiff in support of its Response (Doc. 100). Defendants also improperly raise a new argument for the first time in their Reply – that Relator is not entitled to any damages because he allegedly

---

[1] Pursuant to the briefing schedule set forth in Doc. 96, the parties expressly agreed that Plaintiff would be permitted to file a Sur-reply to Defendants' Motion.

has "unclean hands."  Even if Defendants could raise this argument in a reply – which

they cannot – it is contrary to both the facts and the law.

Simply stated, Defendants' Reply provides no legal basis to overcome the fact

that:

- Each UB-92 Form Defendants submitted to the Government constituted a separate false claim for which Plaintiff is entitled to recover a statutory penalty;

- Plaintiff is entitled to recover damages under the FCA equal to the full amount of monies it paid to Defendants as a result of their false certifications; and

- Defendants' Eighth Amendment attack is premature and erroneous:

Accordingly, Defendant's Motion must be denied.

**EVIDENCE IN SUPPORT OF SUR-REPLY**

This Sur-reply is supported by the following evidence:

1.     Exhibit A – Deposition Testimony of Jim Springfield

2.     Exhibit B - Declaration of Michael N. Swetnam, Jr.

**ARGUMENT & AUTHORITIES**

**I.     Each Submission of a UB-92 Form Constitutes A Separate False Claim for Medicare Payment Upon Which FCA Penalties Must Be Based.**

Defendants begin their Reply by making the astounding claim that "[t]his

lawsuit does not involve Valley Baptist's submission of false UB-92 forms," and that

Relator has prosecuted this case *only* "under a theory that Valley Baptist violated the

FCA by submitting Annual Cost Reports."  (Doc. 101 at ¶¶ 3, 10).  As detailed in

Plaintiff's Response, these statements are patently false and belied by the allegations in

the Second Amended Complaint ("SAC").  Indeed, the SAC clearly states that "[d]uring

the relevant time period, Medicare payments for hospital services were determined by

the claims submitted by [VBMC] for particular patient discharges (specifically listed on

2

UB-92s) during the course of the fiscal year." (SAC at ¶ 22).  More importantly, the SAC alleges that "Defendants knowingly made, used, and caused to be made or used, false records or statements – i.e. the false certifications and representations made and caused to be made by Defendants *when initially submitting the false claims for interim payments* . . . ." (*Id.* at ¶ 69 (emphasis added)).  Despite Defendants' attempt to ignore these allegations, this case is (and has always been) about Defendants false submission of UB-92 forms.[2]

More importantly, Defendants make no argument to refute that each submission of a UB-92 form constitutes a separate "claim" for FCA purposes.  Instead, Defendants assert that the multitude of cases cited in Plaintiff's Response, which have reached that very conclusion are "inapplicable to this lawsuit."  (Doc. 101 at ¶ 3).  From there, Defendants spend over two pages pointing out *factual* differences between those cases and the present action.  (*Id.* at ¶¶ 4 – 9).  Apparently, under Defendants' tortured view of American jurisprudence, case law has no persuasive authority unless it is factually identical to the case at hand.  But setting that aside[3], Defendants cannot refute that each of the cases cited in Plaintiff's Response clearly held that each submission of a UB-92 form constitutes submission of a "claim" for FCA purposes – regardless of the particular facts or underlying legal basis that rendered each claim (i.e. UB-92 form) false.  Indeed, the *Toumey* Court rejected the very same argument made by Defendants here – that only hospital cost reports constitute "claims" upon which FCA penalties can be based.  *See United States ex rel. Drakeford v. Toumey*, 976 F. Supp. 2d 776, 794 (D.S.C. 2013).  Defendants' attempt to distinguish *Toumey* because it dealt with Stark violations,

---

[2] Further, Defendants do not even attempt to refute that they did – in fact – submit the UB-92 forms during the applicable time period for this case, and that the Government paid VBMC based on each individually submitted claim (UB-92).  Indeed, this fact has been admitted by VBMC's CEO during his recent deposition. (*See* Ex. A at Pgs. 86 – 93).

[3] Plaintiff sees no need to unnecessarily burden the Court with additional reading by refuting Defendants' alleged factual differences on a case-by-case basis.

and not Anti-Kickback Statute ("AKS") violations, ignores the similarities and close ties between the two laws.[4]

In summary, Defendants have failed to meet their summary judgment burden with respect to the calculation of FCA penalties that may be awarded in this case. Virtually every federal court that has analyzed the issue has held that each submission of a UB-92 form constitutes a separate claim for FCA purposes.   As such, pursuant to the mandatory penalty scheme set forth in the FCA, Plaintiff is entitled to a penalty between $5,000 and $10,000 for each false UB-92 form.[5]

## II.   Plaintiff Is Entitled to Recover Damages Under the FCA Equal to the Full Amount of Monies It Paid to Defendants as a Result of Their False Certifications ("Recoupment Damages").

Defendants continue to bury their heads in the sand and make the erroneous argument that Plaintiff cannot seek recoupment damages because the Government chose not to intervene in this case.  (Doc. 101 at ¶¶ 11 – 12).  Plaintiff completely refuted this false assertion in its Response (Doc. 100 at Pgs. 4 – 6) and will not belabor the point again here except to reiterate – Relator is not bringing this suit and seeking damages on his own behalf, but instead on behalf of the real party interest, the United States Government.  Simply stated, the Government's lack of intervention is irrelevant to the form and calculation of damages allowed under the FCA.   Tellingly, Defendants do not – and indeed cannot – offer any argument in reply.

---

[4] In addition, unlike the plaintiff in *U.S. ex rel. Hawaii v. Hawaii Pacific Health*, 409 Fed. Appx. 133, 134 (9th Cir. 2010), Relator here has identified the specific statute – the AKS – that rendered each UB-92 form false. (Doc. 100 at Pgs. 7 – 9).

[5] Defendants attempt to make some unspecified point by "noting" that Relator's damages expert has calculated the penalties to be between $155,300,000 and $310,600,000, while the Medicare revenue received by VBMC was only $66,400,000.  This is irrelevant.  Under the FCA, the Government is entitled to recover between $5,000 and $10,000 for each fraudulent claim.  31 U.S.C. § 3729(a).  As such, "[t]he FCA permits recovery of multiple penalties, where a defendant has submitted several different fraudulent claims."  *Kelsoe v. Fed. Crop Ins. Corp.*, 724 F. Supp. 448, 453 (E.D. Tex. 1988).  The legislative history of the 1986 amendments makes clear that penalties are "automatic and mandatory for each claim which is false."  S.Rep. No. 345, 99th Cong., 2d Sess. 8 (1986).

Moreover, Defendants fail to put forth any substantive reply to the over six pages of argument and authorities cited in Plaintiff's Response (Doc. 100), showing clearly that in cases such as this, FCA damages are "measured by the amount wrongfully paid to satisfy the false claim." *United States v. Aerodex, Inc.* 469 F.2d 1003, 1011 (5th Cir. 1972). Instead, Defendants resort only to pointing out factual differences between this case and *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 473 (5th Cir. 2009). But any factual differences between *Longhi* are irrelevant. Indeed, what Defendants cannot overcome or explain away with purported factual distinctions is *Longhi's* clear mandate that in cases "where there is no tangible benefit to the government and the intangible benefit is impossible to calculate, it is appropriate to value damages in the amount the government actually paid to the [d]efendants." *Longhi*, 575 F.3d at 473.

Just like *Longhi*, there is a direct casual relationship between the federal funds VBMC received from the Government and their false certifications that they were complying with all existing laws – including the AKS. Because there is no tangible benefit to the Government in paying/reimbursing Medicare claims, the proper measure of damages is the full amount the Government paid as a result of the false claims. *See Longhi*, 575 F.3d at 473. "[H]ad the government known about the referral inducement program[] alleged in the amended complaint, the government [would] have rejected payment of claims tainted by [that] program[]." *United States ex rel. Daugherty v. Bostwick Labs.*, No. 1:08-CV-00354, 2012 WL 6593804, at *11 (S.D. Ohio Dec. 12, 2012). Indeed, "the Government does not get what it bargained for when a defendant is paid by CMS for services tainted by a kickback." *United States ex rel. Westmoreland v. Amgen, Inc.*, 812 F. Supp. 2d 39, 5 (D. Mass. 2011) (internal citations omitted).

In summary, the Government simply seeks to recover the money it paid to Defendants as a result of their false UB-92 form claims.  The Fifth Circuit, as well the vast majority of other federal courts, have utilized and/or upheld this damages model in cases of this kind.

### III.   Defendants Cannot Assert a New "Unclean Hands" Argument in Their Reply, and in Any Event, Such Argument Is Erroneous.

For the first time, Defendant argues that this Court should reduce any damages awarded to Relator pursuant to 31 U.S.C. § 3703(d)(3) because he allegedly has "unclean hands" due to his role in "creating and administering the XOL Program."  (Doc. 101 at ¶ 13).   To begin, Defendants cannot raise a new argument for the first time in a reply brief.  Indeed, "it is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs."  *Gillaspy v. Dallas Ind. School Dist.*, 278 Fed. Appx. 307, 315 (5th Cir. 2008).  *See also Johnson v. Wal-Mart Stores East, LP*, No. 3:12-cv-21-CWR-FKB, 2013 WL 395975, at *3 n. 1 (S.D. Miss. Jan. 31, 2013) (holding that a "reply memorandum is not the appropriate place to raise new arguments."); *Walsh v. Stratos Offshore Servs. Co.*, No. H-11-2603, 2012 WL 3929870, at *5 n. 6 (S.D. Tex. Sept. 7, 2012) ("[I]t is this court's general practice not to consider arguments raised for the first time in reply briefs."); *Winterthur Int'l Am. Ins. Co. v. Bridgestone/Firestone, Inc.*, No. Civ.A. 3:01-CV-0059, 2003 WL 21281736, at *1 (N.D. Tex. May 27, 2003) (holding that it "will not consider new grounds raised for the first time in a reply brief.").  Accordingly, this Court should not consider Defendants' new argument that Relator is not entitled to damages as a result of unclean hands.

Even if the Court does consider Defendants' new argument – which it should not – the argument is erroneous.  First, Defendants provide no evidence to support their contention that Relator has unclean hands.  Instead, they merely assert that it is undisputed that he "created" and "administered" the program.  This is a gross

6

oversimplification of the facts of this case.  Contrary to Defendants' claims, Relator made repeated efforts to get VBMC to shut down the XOL Program (Ex. B), and certainly did not "plan or initiate[] a violation of section 3729" as required for section 3730(d)(3) to apply.  31 U.S.C. § 3730(d)(3).

But even if he did, that fact has no bearing on *the Government* recovering all of the damages it is entitled to in this case.  Defendants again fail to understand (or more likely willfully ignore) the procedural nature of an FCA *qui tam* suit.  Indeed, section 3730(d)(3) has no application to the total damages awarded, but only serves to reduce the percentage of the proceeds in which the Relator may share.[6]  As such, Defendants' argument is, ultimately, irrelevant.

## IV.    Defendants' Eighth Amendment Attack Is Premature and Erroneous.

Defendants offer absolutely no substantive response or argument to the overwhelming amount of case law holding that their Eighth Amendment attack is premature.  In fact, they essentially admit this fact by reserving their right to raise the issue at trial.  (Doc. 101 at ¶ 14).  In any event, Defendants have failed to satisfy their summary judgment burden to prove any damages award would violate the Eighth Amendment's excessive fines clause.  Finally, to Defendants' assertion, Plaintiff did address each substantive factor used in determining such a violation.  (Doc. 100 at Pgs. 19 – 20).

## <u>CONCLUSION AND PRAYER</u>

WHEREFORE, Plaintiff requests that Defendants' Motion be denied in full, and that Plaintiff be granted such other and further relief to which it may be justly entitled.

---

[6] Defendants also lack standing to seek a reduction of Relator's share of the proceeds. That is the Government's decision and right after damages have been awarded.

Respectfully submitted,

WATTS GUERRA LLP
300 Convent Street, Suite 100
San Antonio, Texas 78205
210.527.0500 - Telephone
210.527.0501 - Fax


By:    _/s/ - Edward W. Allred_____
         Edward W. Allred
         State Bar No. 50511764
         Mikal C. Watts
         State Bar No. 20981820
         Francisco Guerra, IV.
         State Bar No. 00797784

*And*

CHAVES, RESENDEZ & RIVERO, L.L.P.
Frost Bank Plaza
802 N. Carancahua, Suite 2100
Corpus Christi, Texas 78470
361.884.5400 - Telephone
361. 884.5401 - Fax

         Joel C. Resendez
         State Bar No.:  16789200
         Southern Bar District ID No. 8188

ATTORNEYS   FOR   PLAINTIFF   UNITED
STATES OF AMERICA, EX REL. MICHAEL N.
SWETNAM, JR.

8

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served on the following attorneys of record in accordance with the Federal Rules of Civil Procedure on this 10th day of July 2014:

Mr. Christopher Paul Hanslik                          *Via Electronic Filing*
Mr. Michel Perez
BOYAR & MILLER PC
4265 San Felipe, Suite 1200
Houston, Texas 77027
*Attorneys for Defendants*


Andrew A. Bobb                                        *Via Electronic Filing*
Assistant United States Attorney
Southern District of Texas
P O Box 61129
Houston, Texas 77208
*Attorneys for The United States of America*


Jon Katz                                              *Via Electronic Filing*
Joyce Branda
Department of Justice – Civil Division
Ben Franklin Station
P O Box 261
Washington, DC 20044
*Attorneys for The United States of America*


                              /s/ - Edward W. Allred
                          _____