AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. MICHAEL N. SWETNAM, JR., *Plaintiff* | ) ) ) |
| VALLEY BAPTIST HEALTH SYSTEM AND VALLEY BAPTIST MEDICAL CENTER, *Defendant* | ) Civil Action No. 1:08-CV-446 ) ) ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:   SMITH-REAGAN INSURANCE AGENCY, 148 S. Sam Houston Blvd., San Benito, Texas 78586, 956.399.1353

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Exhibit "A" attached hereto.

| Place: Bryant Stingley Inc., 2010 East Harrison Avenue Harlingen, Texas 75880, 956.428.0755 | Date and Time: August 25, 2014 at 1:00 p.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____          *Edward W. Allred*
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  **Plaintiff**
Michael N. Swetnam, Jr. , who issues or requests this subpoena, are:
Edward Allred WattsGuerraLLP 300 Convent St, Ste100,SanAntonio, TX 78205, 2105270500 eallred@wattsguerra.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. MICHAEL N. SWETNAM, JR., <br><br>　　Plaintiff, <br><br>VS. <br><br>VALLEY BAPTIST HEALTH SYSTEM AND VALLEY BAPTIST MEDICAL CENTER, <br><br>　　Defendants. | § <br> § <br> § <br> § <br> § <br> § 　　CASE NO. 1:08-CV-446 <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**EXHIBIT "A"**
**PLAINTIFF MICHAEL N. SWETNAM, JR.'S FIRST REQUESTS FOR PRODUCTION TO NON-PARTY SMITH-REAGAN INSURANCE AGENCY**

1.　Any and all documents relating to the Excess of Loss Self-Insurance Plan identified in the VBMC Excess Of Loss Self-Insurance Trust Agreement, the VBMC Excess Of Loss Self-Insurance Trust Agreement, the claims and causes of action, and the allegations contained in the current Complaint filed in this Cause, from October 1, 2008, to the present date.

　　**RESPONSE:**


2.　All documents you sent to the United States Department of Justice, Department of Health and Human Services, or any other agency or department of the United States Federal Government related to this Lawsuit.

　　**RESPONSE:**


3.　All documents you received from the United States Department of Justice, Department of Health and Human Services, or any other agency or department of the United States Federal Government related to this Lawsuit.

　　**RESPONSE:**

4. All documents and communications between you and Relator relating to the XOL Program from January 1, 1998 until the present.

   **RESPONSE:**

5. All documents and communications between you and the Defendants in the above-styled cause, relating to the XOL Program from January 1, 1998 until the present, including any internal emails, letters, or other correspondence with the Defendants.

   **RESPONSE:**

6. All documents and communications between you and any other person or entity relating to the XOL Program from January 1, 1998 until the present.

   **RESPONSE:**

7. All documents evidencing or describing who managed and/or handled the insurance programs for Defendants.

   **RESPONSE:**

8. All documents evidencing, identifying, or describing Defendants' relationship with Smith-Reagan Insurance Agency, including but not limited to any contracts or agreements between Smith-Reagan Insurance Agency and Defendants.

   **RESPONSE:**

9. All documents and/or communications between you and any banking or financial institutions relating to the XOL Program, including but not limited to any documents or communications between you and Nations Bank of Texas, N.A., its representatives, affiliates, and/or its successors.

   **RESPONSE:**

10. All documents evidencing and/or supporting in any way the amount of physician professional liability insurance limits that other area hospitals required the physicians on their medical staffs to maintain.

    **RESPONSE:**

11. All documents evidencing when and whether you became aware of the Anti-Kickback legislation and became concerned about the physician excess of loss self-insurance program.

    **RESPONSE:**

12. All documents and/or communications relating to the letter from Patsy Nichols of Fulbright Jaworski.

    **RESPONSE:**

13. All documents evidencing the reason(s) that Defendants' administration chose to disregard the Fulbright Jaworski recommendation that the physician excess of loss self-insurance program be discontinued.

    **RESPONSE:**

14. All documents that evidence that Defendants, Defendants' Board, management and/or individual Board members were cautioned that the program had been deemed to be in violation (or possibly a violation) of federal law and as a result should be dismantled.

    **RESPONSE:**

15. All documents that evidence Defendants, Defendants' Board, management and/or individual Board members were given any warning, or admonitions that the program had been deemed to be in violation (or possibly a violation) of federal law.

    **RESPONSE:**

16. All documents that evidence Defendants' total annual net patient service revenue, for the year 1990.

    **RESPONSE:**

17. All documents that evidence Defendants' total annual net patient service revenue, for the year 1991.

    **RESPONSE:**

18. All documents that evidence Defendants' total annual net patient service revenue, for the year 1992.

    **RESPONSE:**

19. All documents that evidence Defendants' total annual net patient service revenue, for the year 1993.

    **RESPONSE:**

20. All documents that evidence Defendants' total annual net patient service revenue, for the year 1994.

    **RESPONSE:**

21. All documents that evidence Defendants' total annual net patient service revenue, for the year 1995.

    **RESPONSE:**

22. All documents that evidence Defendants' total annual net patient service revenue, for the year 1996.

    **RESPONSE:**

23. All documents that evidence Defendants' total annual net patient service revenue, for the year 1997.

    **RESPONSE:**

24. All documents that evidence Defendants' total annual net patient service revenue, for the year 1998.

    **RESPONSE:**

25. All documents that evidence Defendants' total annual net patient service revenue, for the year 1999.

    **RESPONSE:**

26. All documents that evidence Defendants' total annual net patient service revenue, for the year 2000.

    **RESPONSE:**

27. All documents that evidence Defendants' total annual net patient service revenue, for the year 2001.

    **RESPONSE:**

28. All documents that evidence Defendants' total annual net patient service revenue, for the year 2002.

    **RESPONSE:**

29. All documents that evidence Defendants' total annual net patient service revenue, for the year 2003.

    **RESPONSE:**

30. All documents that evidence Defendants' total annual net patient service revenue, for the year 2004.

    **RESPONSE:**

31. All documents that evidence Defendants' total annual net patient service revenue, for the year 2005.

    **RESPONSE:**

32. All documents that evidence Defendants' total annual net patient service revenue, for the year 2006.

    **RESPONSE:**

33. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1990.

    **RESPONSE:**

34. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1991.

    **RESPONSE:**

35. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1992.

    **RESPONSE:**

36. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1993.

    **RESPONSE:**

37. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1994.

    **RESPONSE:**

38. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1995.

    **RESPONSE:**

39. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1996.

    **RESPONSE:**

40. All documents that evidence Defendants' total annual net patient service revenue received from federal Medicare payments, for the year 1997.

    **RESPONSE:**

41. David Smith's communications to Mr. Hamlin relating to David Smith and Joe Reagan being appointed as Agent of Record for Defendants in 2008.

    **RESPONSE:**

42. All drafts, revisions, modifications, and redlines of the "manuscript" described in Paragraph 41 of the Complaint.

    **RESPONSE:**

43. Draft PowerPoint presentations, from which Ben McKibbons and/or David Smith removed Mike Swetnam's disclosure about the XOL Plan concerns and recommendation that a third legal opinion be obtained with regard to the physician excess of loss self-insurance program.

    **RESPONSE:**

44. All letters, memorandums, and communications between Mike Swetnam and Ben McKibbons

    **RESPONSE:**

45. All letters, memorandums, and communications to James Springfield suggesting that the physician excess of loss self-insurance program be dismantled

    **RESPONSE:**

46. Documents sufficient to identify the number of Medicare and Medicaid claims for payment submitted by Defendants on an annual basis from 1990 through 2008.

    **RESPONSE:**

47. Documents sufficient to identify the number of Medicare and Medicaid claims for payment submitted by Defendants on a quarterly basis from 1990 through 2008.

    **RESPONSE:**

48. Documents sufficient to identify the number of Medicare and Medicaid claims for payment from physicians not participating in the XOL program on an annual basis from 1990 through 2008.

    **RESPONSE:**

49. Documents sufficient to identify the dollar amount of Medicare and Medicaid claims for payment submitted by Defendants on a quarterly basis from 1990 through 2008.

    **RESPONSE:**

50. Documents sufficient to identify the number of Medicare and Medicaid claims for payment from physicians not participating in the XOL program on a quarterly basis from 1990 through 2008.

    **RESPONSE:**

51. Documents sufficient to identify the average tenure of a physician with the Defendants on a quarterly and annual basis from 1990 through 2008.

    **RESPONSE:**

52. Documents sufficient to identify the number of physicians that referred patients to the Defendants on a quarterly and annual basis from 1990 through 2008.

    **RESPONSE:**

53. Documents sufficient to identify the amount that the Defendants paid into the XOL program annually from 1993 through 2004.

    **RESPONSE:**

54. Documents sufficient to identify the amount that the Defendants paid into the XOL program quarterly from 1993 through 2004.

    **RESPONSE:**

55. Documents sufficient to identify the total cost of the XOL program on a quarterly and annual basis from 1993 through 2004.

    **RESPONSE:**

56. All documents and communications with American International Group, Inc. – Insurance (AIG) relating to the XOL Program from January 1, 1998 until the present, including any internal emails, letters, or other correspondence with AIG partners and employees.

    **RESPONSE:**

57. All documents and communications referring or relating to Valley Baptist Medical Center's September 1, 2000 purchase of an unlimited extended reporting endorsement for the XOL coverage allowing the insured of all XOL physicians, including but not limited to Obstetrics and Gynaecology physicians and Pediatricians (during the time frame of September 1, 1992 through September 1, 2000) to report claims until November 15, 2020.

    **RESPONSE:**

58. Any and all CMS-2552 forms (more commonly know as the hospital cost report) covering all requests for payment for medical goods and/or services provided between October 9, 2002 and April 15, 2003, by any physician in the XOL Program.

    **RESPONSE:**

59. Any and all UB-92 forms covering all requests for payment for medical goods and/or services provided between October 9, 2002 and April 15, 2003, by any physician in the XOL Program.

    **RESPONSE:**

60. All Medicare Provider Agreement(s) covering the period of time between October 9, 2002, and April 15, 2003 (this Request includes any document(s), contract(s), and/or agreement(s) between each of the Defendants and any representative or agent of the federal government wherein the Defendant(s) and the federal government agreed for either Defendant to provide medical services under the federal government's Medicare program).

    **RESPONSE:**

61. If no Medicare Provider Agreements are produced in response to Request No. 1, above, then please produce all Medicare Provider Agreements in place from January 1, 1998, through the present (this Request includes any document(s), contract(s), and/or agreement(s) between each of the Defendants and any representative or agent of the federal government wherein the Defendant(s) and the federal government agreed for either Defendant to provide medical services under the federal government's Medicare program).

    **RESPONSE:**

62. All Medicaid Provider Agreement(s) covering the period of time between October 9, 2002, and April 15, 2003 (this Request includes any document(s), contract(s), and/or agreement(s) between each of the Defendants and any representative or agent of the federal government wherein the Defendant(s) and the federal government agreed for either Defendant to provide medical services under the federal government's Medicaid program).

    **RESPONSE:**

63. If no Medicaid Provider Agreements are produced in response to Request No. 1, above, then please produce all Medicare Provider Agreements in place from January 1, 1998, through the present (this Request includes any document(s), contract(s), and/or agreement(s) between each of the Defendants and any representative or agent of the federal government wherein the Defendant(s) and the federal government agreed for either Defendant to provide medical services under the federal government's Medicaid program).

    **RESPONSE:**

64. One copy of a completed CMS-2552 form (more commonly known as the hospital cost report) covering all requests for payment for medical goods and/or services provided for each of the following years for any physician providing services (this Request includes any document(s), report(s), and/or forms submitted in lieu of the CMS-2552 form):
    a. 1998
    b. 1999
    c. 2000
    d. 2001
    e. 2002
    f. 2003
    g. 2004
    h. 2005
    i. 2006
    j. 2007
    k. 2008
    l. 2009
    m. 2010
    n. 2011
    o. 2012
    p. 2013
    q. 2014

    **RESPONSE:**

65. One copy of a blank CMS-2552 form (more commonly known as the hospital cost report) covering all requests for payment for medical goods and/or services provided for each of the following years for any physician providing services (this Request includes any document(s), report(s), and/or forms submitted in lieu of the CMS-2552 form):
    a. 1998
    b. 1999
    c. 2000
    d. 2001
    e. 2002
    f. 2003
    g. 2004
    h. 2005
    i. 2006
    j. 2007
    k. 2008
    l. 2009
    m. 2010
    n. 2011
    o. 2012
    p. 2013
    q. 2014

    **RESPONSE:**

66. One copy of a completed Form UB-92 (also known as Form HCFA-1450) covering all requests for payment for medical goods and/or services provided for each of the following years for any physician providing services (this Request includes any document(s), report(s), and/or forms submitted in lieu of the Form UB-92):
    a. 1998
    b. 1999
    c. 2000
    d. 2001
    e. 2002
    f. 2003
    g. 2004
    h. 2005
    i. 2006
    j. 2007
    k. 2008
    l. 2009
    m. 2010
    n. 2011
    o. 2012
    p. 2013
    q. 2014

**RESPONSE:**

67. One copy of a blank Form UB-92 (also known as Form HCFA-1450) covering all requests for payment for medical goods and/or services provided for each of the following years for any physician providing services (this Request includes any document(s), report(s), and/or forms submitted in lieu of the Form UB-92):
    a. 1998
    b. 1999
    c. 2000
    d. 2001
    e. 2002
    f. 2003
    g. 2004
    h. 2005
    i. 2006
    j. 2007
    k. 2008
    l. 2009
    m. 2010
    n. 2011
    o. 2012
    p. 2013
    q. 2014

    **RESPONSE:**

68. All Forms UB-92 generated and sent to the federal government for each patient treated/discharged from the Defendants' hospitals, from October 9, 2002, through April 15, 2003.

    **RESPONSE:**

69. Records identifying the number of patients treated by Defendants and for which Forms UB-92 were submitted to the federal government for payment and/or reimbursement.

    **RESPONSE:**

70. All Forms CMS-2552 ("hospital cost reports" or similar annual reports) generated and sent to the federal government covering medical treatments provided by Defendants between October 9, 2002, and April 15, 2003

**RESPONSE:**

71. Records indicating the identity of the person(s) preparing and/or submitting Medicare and Medicaid billings each month, from October 9, 2002, until April 15, 2003.

    **RESPONSE:**

72. All Medicare Provider Agreements between Defendant(s) and the federal government covering the time period from October 9, 2002, to April 15, 2003.

    **RESPONSE:**

73. Records indicating whether the Defendants issued Forms 1099 to physicians participating in the XOL Program from October 9, 2002, to April 15, 2003.

    **RESPONSE:**

74. Records indicating the person(s) that had check-writing authority to issue payments on behalf of the VBMC XOL Trust Fund.

    **RESPONSE:**

75. Records indicating the person(s) making insurance proposals to Defendants from January 1, 1998 through April 15, 2003.

    **RESPONSE:**

76. Records indicating the authorization of payments, and the making of payments to physicians (or to third parties on behalf of or for the benefit of physicians) from the VBMC XOL Trust Fund, including the person(s) authorizing and making such payments.

    **RESPONSE:**

77. Records indicating whether the VBMC Trust Fund or Defendants issued Forms 1099 for payments made by or from the VBMC XOL Trust Fund.

    **RESPONSE:**

78. Records identifying the person(s) who managed the VBMC XOL Trust Fund.

    **RESPONSE:**

79. Records identifying every concern or question about the VBMC's XOL Program's legality, compliance, and/or violation of any law, regulation, rule, or statute.

    **RESPONSE:**

80. Records indicating whether the Defendants used the XOL Program as a benefit, recruitment tool, and/or incentive to get new physicians to join VBMC's medical staff.

    **RESPONSE:**