IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. MICHAEL N. SWETNAM, JR., <br><br>    Plaintiff, <br><br> v. <br><br> VALLEY BAPTIST HEALTH SYSTEM and VALLEY BAPTIST MEDICAL CENTER <br><br>    Defendants. | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 1:08-CV-446 |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING RELATOR'S FALSE CLAIMS ACT CLAIMS

Defendants, Valley Baptist Health System ("VBHS") and Valley Baptist Medical Center ("VBMC") (collectively, "Valley Baptist" or "Defendants"), file this Motion for Summary Judgment Regarding Relator's False Claims Act Claims ("Motion") and in support thereof would show the Court as follows:

### I.  SUMMARY OF ARGUMENT

1.      Relator has prosecuted this case—in which the Government declined to intervene—under a theory that Valley Baptist violated the False Claims Act ("FCA")[1] by falsely certifying in its Medicare and Medicaid reimbursement requests that it complied with the Anti-Kickback Statute ("AKS").[2] Relator claims that Valley Baptist violated the AKS because the medical services for which Valley Baptist sought reimbursement were provided through an illegal kickback scheme—the XOL Program—that Valley Baptist instituted with the intent to induce patient referrals.[3] However, Relator's claim is without merit because:

---

[1] 31 U.S.C. §§ 3729 et seq.
[2] 42 U.S.C. § 1320a-7b.
[3] *See* Doc. 79 ¶ 58.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                                                                                                                    **Page 1 of 15**

- Relator admitted the "XOL Program was never based upon the physician's referral of any patient" to VBMC;

- Despite engaging in two years' worth of voluminous written discovery and taking the depositions of 5 "key" witnesses, Relator lacks any evidence that XOL Program's purpose was to induce referrals; and

- Because Relator lacks any evidence that Valley Baptist instituted the XOL Program with the intent to induce referrals, Relator will likely claim that XOL Program violates the AKS because it benefitted Valley Baptist with physician recruitment and retention. However, recruitment and retention, without the requisite intent to induce a referral, is not an AKS violation.

Because an AKS violation is a necessary component of Relator's FCA claims, and because that claim fails, Relator's FCA claims also fail. For these reasons, Valley Baptist is entitled to summary judgment.

## II.  SUMMARY OF BACKGROUND

2. The Court is familiar with the facts underlying Relator's lawsuit.[4] Therefore, Valley Baptist only includes those additional facts that are necessary to resolve the underlying Motion.

### A.  The XOL Program's implementation

3. In 1993, Valley Baptist implemented the XOL Program in response to malpractice and insurance crisis that then existed in the Rio Grande Valley.[5] Simply stated, the XOL Program provided physicians that enrolled in the program an excess layer of insurance ($300,000/$900,000) so long as the physicians met certain requirements. These requirements included a requirement that the physician:

1. obtain and pay for a primary layer of coverage in the minimum amount of $200,000/$600,000;

2. participate in any medical staff or Valley Baptist quality assurance activities as assigned;

---

[4] *See* Doc. 70.
[5] Exhibit A, Declaration of Kevin McAnaney ¶ 10.

3. participate on the emergency call roster without compensation and treat any emergency patient regardless of insurance coverage; and

4. complete all patient medical records within thirty days of discharge.[6]

### B. Relator's statement that the XOL Program's intent was not to induce referrals

4.     In 1998, Smith Raegan, Valley Baptist's long-time insurance agent, corresponded with Fulbright & Jaworski regarding certain tax issues surrounding the XOL Program.[7] Importantly, and as it relates to the claims Relator is now trying to make, Relator expressly stated:

> ***The hospital's XOL program was never based upon the physician's referral of any patient to the hospital facility.*** It was based and conditioned upon each participating physician's agreement to do three items: 1) provide "on-call" in the hospital's emergency room; 2) to complete the patient's medical records within (30) days of the patient's discharge date; and 3) to participate in the hospital's Q/A programs.[8]

### C. This Court's August 6, 2012 Memorandum Opinion and Order

5.     As the Court is aware, in July of 2011, Valley Baptist moved for summary judgment on Relator's Stark, Anti-Kickback and two of Relator's FCA claims.[9] At that time, Relator claimed that—after almost three years of litigation—he had not been given an adequate opportunity to engage in discovery, including being "unable to depose key individuals who could shed light on the [AKS] intent issue."[10] The Court granted Valley Baptist's motions with respect to Relator's Stark claim and one of Relator's three FCA claims.[11] The Court—relying solely on

---

[6] *See id*; *see also* Doc. 37 ¶ 13.
[7] *See* Exhibit B, Relator's Admission, Bates No. VB-QT 001311.
[8] *Id.*
[9] *See* Docs. 37 and 38.
[10] Doc. 70 p. 17.
[11] *See id.*

Relator's Declaration—found that a genuine issue of material fact existed as the other FCA claim on which Valley Baptist sought summary judgment.[12]

### D. Relator's extensive discovery since the August 6, 2012 Memorandum Opinion and Order

6.     Since 2011, Relator has engaged in extensive discovery on his claims. For example, Relator served on Valley Baptist at least 8 different sets of requests for production comprising approximately 234 separate requests.[13] Relator also served Valley Baptist with 20 separate interrogatories.[14] In response to Relator's discovery requests, Valley Baptist produced to Relator more than 6,500 documents.[15] In addition, Relator has had the opportunity to depose the following "key" individuals about his claims:

- Dr. Rella Adams (Valley Baptist's former Senior Vice President of Nursing);
- Beverly Farrell (Valley Baptist's former Risk Manager);
- William Morgan Hay (Valley Baptist's former Vice President of Finance);
- Dr. Eric Six (Valley Baptist's former Medical Director); and
- James Springfield (Valley Baptist's former CEO).[16]

Drs. Adams and Six served in the above roles at Valley Baptist during the entire period of the XOL Program.[17] These individuals would logically be two of the best positioned Valley Baptist employees to offer evidence on the issue of whether the XOL Program's intent was to induce patient referrals, yet neither was asked that question.[18] This is not surprising as both would have

---

[12] *See id.* at pp. 17-18.
[13] Exhibit C, Declaration of Chris Hanslik.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *See* Exhibit D, Deposition of Dr. Rella Adams 8:4-13; *see also* Exhibit E, Deposition of Dr. Eric Six 6:1-2, 64:6-15; *see also* Exhibit F, Deposition of Beverly Farrell at 16:10-19.
[18] *Id.*

testified just as Relator himself stated in 1998—"The hospital's XOL Program was never based upon the physician's referral of any patient to the hospital facility."[19]

### III. ARGUMENTS AND AUTHORITIES

7. Pursuant to Federal Rule of Civil Procedure 56, Valley Baptist moves for summary judgment on Swetnam's remaining claims because there is no genuine issue of material fact that Valley Baptist did not institute the XOL Program with the intent to induce referrals.

#### A. Summary Judgment Standard.

8. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."[20] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ."[21] "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[22]

9. "Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact."[23] If the burden of proof at trial lies with the non-moving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case."[24] While the

---

[19] *See* Exhibit B, Relator's Admission, Bates No. VB-QT-1311.
[20] FED. R. CIV. P. 56(a).
[21] FED. R. CIV. P. 56(c)(I)(A).
[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[23] *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex*, 477 U.S. at 323).
[24] *Celotex*, 477 U.S. at 325.

party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case.[25]

10.  "When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegation of its pleadings."[26] The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.[27] "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[28]

### B. To recover on his FCA claims, Relator must prove Valley Baptist violated the AKS.

11.  This Court has previously granted summary judgment as to Relator's Stark Claim and one of Relator's three FCA claims.[29] Relator's only remaining claims are that Valley Baptist violated sections (a)(1) and (a)(2) of the FCA.[30] Those sections establish liability for any person who:

> (1) knowingly presents, or cause to be presented, to an officer or employee of the United States Government . . . **a false or fraudulent claim** for payment or approval; (2) knowingly makes, uses, or causes to be made or used, **a false record or statement to get a false or fraudulent claim** paid or approved by the Government.[31]

A claim can meet the falsity requirement if it is either factually false or legally false.[32] "It may be factually false if it incorrectly describes the goods or services provided or a request for goods or

---

[25] *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).
[26] *Id.*
[27] *Id.*
[28] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1068, 1075 (5th Cir. 1994) (en banc)).
[29] *See* Doc. 70.
[30] Doc. 79 ¶¶ 65-70.
[31] 31 U.S.C. § 3729(a) (emphasis added).
[32] *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 S. Supp. 2d 25, 64 (D.D.C. 2007).

services provided, or it may be legally false because of an express false certification or an implied false certification."[33]

12. Here, to identify purportedly legally false claims, Relator attempts to derive falsity from the documents Valley Baptist submitted to Medicare and Medicaid wherein it requested reimbursement for the medical services it rendered to low income and elderly patients.[34] Relator claims these reimbursement requests were false because Valley Baptist certified that it had complied with applicable laws and regulations when, in fact, it had not done so.[35] Specifically, Relator claims Valley Baptist falsely certified compliance with the AKS.[36] According to Relator, Valley Baptist violated the AKS because the XOL Program's purpose was to induce referrals to VBMC, which the AKS prohibits.[37] Therefore, to prove the falsity element of his FCA claims, Relator must first prove Valley Baptist violated the AKS—i.e., that the XOL Program's purpose was to induce referrals.

### C. There is no genuine issue of material fact that the XOL Program's purpose was not to induce referrals to VBMC.

13. As the Court recognized in its August 8, 2012 Memorandum Opinion and Order, to establish that Valley Baptist violated the AKS—and hence the FCA—"Relator must show that Defendants … remunerated physicians with a purpose to induce referrals…."[38] The case on which the Court relies for this statement—*United States ex rel. Pogue v. Diabetes Treatment Centers of America*—is illustrative on this issue.[39] In *Pogue*, the Government alleged that the defendant induced its medical directors to submit false Medicare and Medicaid claims in

---

[33] *Id.* The Fifth Circuit, however, has not adopted an implied false certification theory. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268-69 (5th Cir. 2010).
[34] *See* Doc. 79 ¶¶ 65-70.
[35] *Id.* at ¶ 62.
[36] *Id.* at ¶ 12
[37] *Id.* at ¶¶ 9-12.
[38] Doc. 70 p. 16 (citing *United States ex rel. Pogue v. Diabetes Treatment Cntrs. Of Am.*, 565 F. Supp. 2d 153, 160 (D.D.C. 2008)).
[39] *See* 565 F. Supp. 2d 153 (D.D.C. 2008).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**      **Page 7 of 15**

violation of AKS by tying the medical directors' remuneration to the number of referrals the medical directors provided to the defendant's treatment center.[40] In that case, the court concluded that the following evidence was sufficient to impose liability under the AKS:

- The medical directors' performance was evaluated, in part, by the medical directors' referral sources to the defendant treatment center;

- The medical directors' contracts required the medical directors to identify and develop referral sources for the defendant treatment center;

- The defendant treatment center had the right to terminate the medical directors' contracts in the event the medical directors did not meet the contractual referral requirements;

- The medical directors were compensated more for referring patients to defendant's facilities;

- The defendant treatment center focused on referral numbers when conducting contract negotiations with medical directors and hospitals; and

- At least one witness testified that the program's purpose was to induce referrals.[41]

14. Here, unlike in *Pogue*, there is no evidence that the XOL Program's purpose was to induce patient referrals. In fact, and as set forth above, Relator himself admits the XOL Program's purpose was not to induce referrals.[42] Rather, the undisputed facts show that Valley Baptist instituted the XOL Program in an attempt to find adequate malpractice insurance coverage for its physicians.[43]

    i. <u>Relator's previous summary judgment evidence should be disregarded in light of Relator's admission that the "XOL Program was never based upon the physician's referral of any patient" to VBMC.</u>

15. Because Relator has had an adequate time to conduct discovery on his claims, the Court should not allow Relator to survive summary judgment on the unsupported beliefs and conjecture contained in the Declaration he signed in response to Valley Baptist's previous

---

[40] *Id.* at 155-56.
[41] *Id.* at 163-65.
[42] Exhibit B, Relator's Admission, Bates No. VB-QT 001311.
[43] *See* Doc. 37 ¶¶ 3-12; *see also* Doc. 38 ¶¶ 3-5; *see also* Exhibit A, Declaration of Kevin McAnaney ¶ 10.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**　　　　　　　　　　　　　　　　　　　　**Page 8 of 15**

Motions for Summary Judgment. With that Declaration, the Court concluded that a fact issue existed because Relator's "declaration includes an (alleged) explicit admission from Defendants' CEO that the XOL Program was good because it helped with patient referrals."[44] That statement, however, says nothing about Valley Baptist's intent with respect the XOL Program. Rather, assuming it is true, the statement merely addresses that the XOL Program "helped" with patient referrals. That statement does not show that Valley Baptist "knowingly and willfully" instituted the XOL Program with the intent to induce referrals, as is required under the AKS.[45]

16. What the evidence does show is that inducing referrals was not Valley Baptist's intent. For example, and as set forth above, in response to a letter from Valley Baptist's counsel, Relator admitted "[t]he hospital's XOL [P]rogram was never based upon the physician's referral of any patient to the hospital facility."[46] As discussed below, Relator's admission is supported by other evidence. Because Relator admitted that Valley Baptist did not institute the XOL Program with the intent to induce referrals, there is no genuine issue of material fact as to whether Valley Baptist violated the AKS.

> ii. <u>Despite the voluminous discovery and depositions that have taken place, there is no evidence that Valley Baptist instituted the XOL Program to induce referrals to VBMC.</u>

17. As the Court noted in its Memorandum Opinion and Order more than two years ago, Relator claimed that he had not been given an ample opportunity to conduct discovery on his claims.[47] Since them, Relator has engaged in extensive discovery by:

- serving on Valley Baptist no less than 8 sets requests for production comprising 234 separate requests for documents.

- serving on Valley Baptist no less than 20 interrogatories; and

---

[44] Doc. 70 p. 18.
[45] *See* 42 U.S.C. 132a-7b(b).
[46] Exhibit B, Relator's Admission, Bates No. VB-QT 001311.
[47] *See* Doc. 70 p. 17

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                                                                 **Page 9 of 15**

- deposing no less than five "key" current or former Valley Baptist employees with knowledge of the XOL Program.[48]

In response to Relator's discovery requests, Valley Baptist produced to Relator more than 6,500 documents.[49] Surprisingly, none of Relator's requests for production or interrogatories inquire about or relate to Valley Baptist's intent to induce referrals under the XOL Program.

18. With respect to the depositions that Relator requested of Valley Baptist's "key" witnesses, none of these deponents testified that the XOL Program's purpose was to induce referrals to Valley Baptist. In fact, Relator's counsel only asked two of the five witnesses about the XOL Program's purpose, and neither witness testified that the purpose was to induce referrals. For example, Valley Baptist's former Risk Manager, Beverly Ferrell, testified as follows:

| | |
|---|---|
| Relator's counsel: | Can you explain for the jury what the purpose or benefit of the XOL program was? |
| Ms. Ferrell: | If memory serves me, the – what we're calling XOL is a layer of insurance. |
| Relator's counsel: | Okay. |
| Ms. Ferrell: | And if that – there was an insurance – we called it a crisis in Texas regarding the physicians – at one point in time the insurance for physicians became prohibitively costly and some of them for certain specialties, it was very expensive and I can't tell you what – how relative that is. I don't know what the dollar amounts are but in their opinion it was too expensive and then it became not the affordability side of it but availability.[50] |
| … | |
| Relator's counsel: | Thank you. Now, the XOL Program changed that or modified that coverage in what way? |

---

[48] Exhibit C, Declaration of Chris Hanslik.
[49] *Id.*
[50] Exhibit F, Deposition of Beverly Ferrell at 16:25-17:13.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                                                     Page 10 of 15

| | |
|---|---|
| Ms. Ferrell: | It was an additional insurance. After they had exhausted in one claim that amount of $200,000, then this policy that the hospital was paying for provided by an insurance carrier was going to step in and pay the next 300,000 up to a maximum of 500,000 for any one claim.[51] |
| … | |
| Relator's counsel: | Well, I'm asking you. Whether it says that or now, that was – that was the benefit, the purpose, the function. |
| Ms. Ferrell: | Not to save doctor's money. It was so they could get it. It was availability at that point. We never did anything because the physicians said it was not affordable.[52] |

Likewise, James Springfield, Valley Baptist's former CEO, never testified that the XOL Program's purpose was to induce referrals. Instead, as the following passage shows, Mr. Springfield testified that he did not recall certain benefits that Relator's counsel suggested Valley Baptist was intending with the XOL Program:

| | |
|---|---|
| Relator's counsel: | In fact, at least two of the stated benefits that Valley Baptist was intending or was actually receiving from the XOL Program were physician retention and physician recruitment, correct? |
| Ms. Springfield: | … I don't recall that.[53] |

19. Put simply, after multiple rounds of written discovery to Valley Baptist and third parties, the production of more than 6,500 documents of data, and the opportunity to take the depositions the "key" witnesses with knowledge of the XOL Program, Relator has no evidence to support any reasonable and legitimate basis that Valley Baptist's intent for the XOL Program was to induce referrals.

---

[51] *Id.* at 21:10-17.
[52] *Id.* at 60:3-9.
[53] Exhibit G, Deposition of James Springfield at 83:6-11.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                                                      **Page 11 of 15**

   iii. <u>Because Relator lacks any evidence that Valley Baptist instituted the XOL Program with the intent to induce referrals, Relator will likely claim that XOL Program violates the AKS because it benefitted Valley Baptist with physician recruitment and retention. However, recruitment and retention, without the requisite intent to induce a referral, is not an AKS violation.</u>

 20. Because there is no evidence that Valley Baptist instituted the XOL Program to induce referrals, Relator will likely claim the XOL Program violates the AKS because it benefitted Valley Baptist with physician recruitment and retention. Accepting as true that the XOL Program aided in physician recruitment and retention, that evidence, alone, does not impose liability under the AKS because it does not show Valley Baptist's intent. The AKS "is aimed at the inducement factor."[54] That is to support an AKS violation, Relator must show that Valley Baptist offered the XOL Program to induce patient referrals.[55]

 21. *Polk County v. Peters* provides an example of what Relator must show to prove that physician recruitment or retention violates the AKS.[56] In *Polk*, a hospital brought suit against a physician in an attempt to recover money advanced pursuant to a recruiting contract between the physician and the hospital's predecessor-in-interest.[57] The hospital claimed that the recruitment contract should not be enforced because it violated the AKS.[58] The court found the recruitment contract violated the AKS because the hospital clearly and explicitly intended to induce referrals because the recruitment contract required the physician to refer patients to it.[59] Here, the contrary is true. The XOL Program said nothing about patient referrals, did not require any physician to refer a patient to Valley Baptist, and the physician received the XOL coverage

---

[54] *Polk County v. Peters*, 800 F. Supp. 1451, 1454 (E.D. Tex. 1992).
[55] *See* 42 U.S.C. ¶ 1320a-7b(b).
[56] 800 F. Supp. 1541 (E.D. Tex. 1992).
[57] *See id.*
[58] *See id.* at 679.
[59] *See id.* at 1456.

even if he or she referred no patients to Valley Baptist.[60] That aside, evidence relating to physician recruitment or retention is a red herring. That is, it does not show that the XOL Program was implemented with the intent to induce patient referrals to the hospital. Because there is still no evidence of the intent to induce a referral, the fact that the XOL Program benefitted physician recruitment and retention is not an AKS violation.

> **D.  Despite Relator's claims, the evidence shows Valley Baptist instituted the XOL Program to address the lack of adequate malpractice insurance.**

22.   Relator suggests—without any evidence—that Valley Baptist instituted the XOL Program with the intent to induce patient referrals.[61] However, the evidence shows that is not correct. For example, as discussed above, Ms. Ferrell testified that Valley Baptist instituted the XOL Program to address the malpractice insurance "crisis" that physicians were experiencing.[62] Ms. Ferrell's testimony—and Valley Baptist's intentions—are further bolstered by the recorded minutes of a meeting wherein Valley Baptist discussed the hospital's need to assist physicians with finding malpractice insurance and Kevin G. McAnaney's Declaration. In the meeting minutes—which were taken before the XOL Program was instituted—nowhere does it mention that the XOL Program should put in place because it will induce referrals.[63] Rather, the minutes specifically reference the need for Valley Baptist to assist physicians to find adequate malpractice insurance.[64] Likewise, in his declaration, Mr. McAnaney states that "[t]he XOL Program was adopted in response to the reported difficulties of VBMC medical staff in obtaining sufficient malpractice coverage to meet the medical staff requirements at a reasonable cost."[65] Indeed, Mr. McAnaney further states that the XOL Program was not unique and that the Office

---

[60] Exhibit A, Declaration of Kevin McAnaney ¶ 10; *see also* Doc. 37 ¶ 13.
[61] *See* Doc. 79 ¶¶ 9-12.
[62] Exhibit F, Deposition of Beverly Ferrell at 16:25-17:13.
[63] Exhibit H, Minutes of Special Meeting dated July 16, 1993, Bates No. VB-QT 000710-00716.
[64] *See id.*
[65] Exhibit A, Declaration of Kevin McAnaney ¶ 10.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                                                                                                                                                             **Page 13 of 15**

of the Inspector General does not consider malpractice subsidy arrangements—like the XOL Program—to violate the AKS.[66]

## IV.   CONCLUSION AND PRAYER

For these reasons, Defendants, Valley Baptist Health System and Valley Baptist Medical Center respectfully request the Court grant their Motion for Summary Judgment and enter a judgment that Relator Michael N. Swetnam, Jr. take-nothing as to Relator's False Claims Act claims. Defendants also requests such other and further relief as to which it may be entitled.

Respectfully submitted,

**BOYARMILLER**

By:   */s/ Chris Hanslik*
        Chris Hanslik
        Federal Id. No. 19249
        State Bar No. 00793895
        4265 San Felipe Road, Suite 1200
        Houston, Texas 77027
        (713) 850-7766 (telephone)
        (713) 552-1758 (facsimile)
        Email: chanslik@boyarmiller.com

ATTORNEY-IN-CHARGE FOR
DEFENDANTS VALLEY BAPTIST
HEALTH SYSTEM AND VALLEY
BAPTIST MEDICAL CENTER

OF COUNSEL:
Edgar Saldivar
Federal I.D. No. 618958
State Bar No. 24038188
BOYARMILLER
4265 San Felipe Road, Suite 1200
Houston, Texas 77027
(713) 850-7766 (telephone)
(713) 552-1758 (facsimile)
Email: esaldivar@boyarmiller.com

Donald H. Romano

---

[66] *Id.* at ¶ 11.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                                                              Page 14 of 15

Foley & Lardner, LLP
D.C. Bar No. 991132
3000 K Street NW, Suite 600
Washington, DC 20007-5109
(202) 945-6119 (telephone)
(202) 672-5399 (facsimile)
Email: DRomano@Foley.com

LOCAL COUNSEL:
Benigno (Trey) Martinez
Law Office of Benigno (Trey) Martinez
State Bar No. 00797011
1201 E. Van Buren
Brownsville, Texas 78520
(956) 546-7159 (telephone)
(956) 544-0602 (facsimile)
Email: Trey@martinezybarrera.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendants' Valley Baptist Health System and Valley Baptist Medical Center Motion for Partial Summary Judgment was served via facsimile on this the 31st day of July, 2014, on all counsel of record as follows:

| | |
|---|---|
| Edward W. Allred<br>Francisco Guerra, IV<br>Mikal C. Watts<br>WATTS, GUERRA CRAFT LLP<br>300 Convent Street, Suite 100<br>San Antonio, TX 78205<br><br>*Attorneys for Relator*<br>*Michael N. Swetnam, Jr.* | *Via Facsimile:* (210) 527-0501 |

                  */s/ Chris Hanslik*
                  Chris Hanslik

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**             Page 15 of 15

MRAHMN\002817\00091\1221390.3